**In re John D. SAMMON and Judith L. Sammon, Debtors.**

No. 99–03532–W.

United States Bankruptcy Court, D. South Carolina.

Sept. 6, 2000.

Robert H. Cooper, Greenville, SC, for Debtors.

William K. Stephenson, Jr., Columbia, SC, trustee.

Helen Elizabeth Burris, Greenville, SC, trustee.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon John D. Sammon and Judith L. Sammon's (collectively "Debtors") Amended Motion for Sanctions, Attorney's Fees, Costs, and Damages, Other Relief, and Objection to Proof of Claim (the "Motion"), filed with the Court on April 25, 2000. Debtors seek a determination that the Internal Revenue Service's ("IRS") filing of a Proof of Claim with an incorrect amount constituted a violation of the automatic stay pursuant to 11 U.S.C. § 362(h)[1] and should be sanctionable under Fed. R.Bankr.P. 9011. Debtors also allege that the United States of America should be liable for damages, sanctions, and/or attorney's fees as a result of their conduct, or pursuant to the Bankruptcy Court's general powers under § 105 of the Bankruptcy Code. After considering the pleadings in the matter, all the evidence presented, and the arguments of counsel at the hearing on the Motion; the Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52, made applicable in bankruptcy proceedings by Fed. R.Bankr.P. 7052.[2]

1. Further references to the Bankruptcy Code shall be by section number only.

2. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to

## FINDINGS OF FACT

1. Debtors timely filed a joint federal income tax liability for the taxable year 1997 on or before April 15, 1998. Debtors' assessed federal income tax liability for 1997 based upon their filed return was $25,040, less a withholding credit of $1,994, for a total liability of $23,046. Debtors made no payments to the IRS at the time they filed their federal income tax return for 1997.

2. On or about June 17, 1998, Debtors mailed a Form 656 Offer in Compromise to the IRS offering to compromise their outstanding 1997 federal income tax liability for $13,600. Debtors included checks to the IRS in the amounts of $5,237 and $8,363 with the Offer in Compromise.

3. By letter dated October 19, 1998, the IRS returned the Offer in Compromise and informed Debtors that it could not be processed because it did not include all the necessary documentation.

4. On November 9, 1998, Debtors resubmitted a Form 656 Offer in Compromise and corrected the deficiencies. The Offer in Compromise was received by the IRS on November 13, 1998. When the Offer in Compromise was resubmitted, Debtors' $13,600 payment was placed into a separate account pending action by the IRS and was not applied in partial satisfaction of Debtors' outstanding federal income tax liability for 1997.

5. On April 22, 1999, while Debtors' Offer in Compromise was still pending with the IRS, Debtors filed a Chapter 13 bankruptcy petition. On Schedule E of the Bankruptcy Schedules, Debtors listed the IRS as a creditor holding unsecured priority claim in the amount of $7,000. The IRS was also included in the Chapter 13 Plan filed on April 22, 1999.[3]

the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

3. The Plan provided:
Subsequent to full payment of the above claims, all 11 U.S.C. § 507 priority claims,

7. On June 4, 1999, after receiving notice of Debtors' bankruptcy petition, the IRS contacted Debtors and advised them that the IRS would no longer consider their Offer in Compromise due to their bankruptcy filing. Debtors withdrew their Offer in Compromise by letter dated June 9, 1999 and requested that the IRS apply the $13,600 deposit they made with the Offer toward their outstanding federal income tax liability for 1997.

8. By letter dated June 15, 1999, the IRS acknowledged the withdrawal of Debtors' Offer in Compromise and indicated that the $13,600 deposit made with the initial Offer would be applied to Debtors' outstanding federal income tax liability as they had requested.

9. On July 15, 1999, the IRS filed a Proof of Claim in Debtors' Chapter 13 Bankruptcy case in the amount of $24,106.71. The Proof of Claim was reviewed and signed by IRS Bankruptcy Specialist Mary Green.

10. At the time the Proof of Claim was reviewed and signed by Ms. Green, Debtors' $13,600 payment had yet to be credited by the IRS to their 1997 federal income tax account. In fact, the payment was not applied to Debtors' account until the week of August 1, 1999. As a result, Ms. Green was unaware of the payment and did not account for it when preparing the Proof of Claim. Furthermore, no evidence was presented to the Court showing that the IRS conducted itself in bad faith or with malice.

11. On September 17, 1999, William K. Stephenson, the Chapter 13 Trustee, wrote Debtors' counsel to inform him that, due to the IRS's Proof of Claim in the amount of $24,106.71, Debtors would have to increase their plan payments from $593.00 per month to $780.00. In response, Debtors filed a modified Plan on October 6, 1999, which provided for the increased pay-

ments. The evidence before the Court indicates that Debtors and their counsel did not object to the IRS's claim either informally or through court procedures nor ever advised the Trustee of any questions or concerns regarding the claim prior to voluntarily amending the Plan on October 6, 1999.

12. Due to unexpected medical costs incurred as a result of Mr. Sammon's surgery and his subsequent inability to work, Debtors also filed a Motion for Modification of Confirmed Plan in the Form of a Moratorium of Payments on October 4, 1999. By Order entered November 24, 1999, the Court granted a moratorium from Debtors' payments in their Chapter 13 case until January of 2000.

13. On January 21, 2000, Debtors' counsel, through his office manager, corresponded with the IRS. The letter stated: "On July 15, 1999, you filed a proof of claim in the amount of $24,106.71. Upon receipt of this letter, please provide me with the amount still due the IRS in regards to these debtors. According to the debtors, they paid $13,600 of the $24,106.71 claim."

14. On February 25, 2000, Debtors filed a Motion to Modify Previously Confirmed Plan requesting that the Court allow them to amend the Plan, providing for, among other things, the surrender of their residence to their mortgage creditors as well as the surrender of a 1994 Lincoln Town Car to Transouth.

15. On February 25, 2000, Debtors filed an Objection to the IRS's Claim alleging that they had not been given credit for the $13,600 payment. Debtors also filed a Motion for Sanctions, Attorney's Fees, Costs, and Damages on the grounds that the IRS violated the automatic stay in Debtor's bankruptcy case by filing a Proof of Claim

(including, but not limited to past due prepetition alimony, support or maintenance obligations, or taxes or other claims of governmental units) will be paid the allowed amount of their prepetition claims, on a pro-rata basis. The debtor shall pay all similar post-petition obligations directly to such creditors as they come due: INTERNAL REVENUE SERVICE.

that did not account for the $13,600 payment and pursuant to Fed.R.Bankr.P. 9011.

16. On March 7, 2000, the IRS filed an Amended Proof of Claim in the amount of $8,426.93 in Debtors' Chapter 13 bankruptcy case. The Amended Proof of Claim reflected Debtors' payment to the IRS of $13,600. The Proof of Claim was transmitted by the IRS to Debtors by letter addressed to their counsel Robert E. Cooper, dated March 8, 2000.

17. On March 9, 2000, Debtors filed another Motion to Modify Previously Confirmed Plan requesting the modification on the plan based on the fact that Debtors had received an amended Proof of Claim from the IRS, reducing their claim for taxes owed.

18. On March 28, 2000, Debtors filed yet another Motion to Modify Previously Confirmed Plan on the basis that they had surrendered their residence but had decided to retain their 1994 Lincoln Town Car.

19. On April 25, 2000, Debtors filed an Amended Motion for Sanctions, Attorney's Fees, Costs, and Damages.

20. On May 8, 2000, the Court entered a Consent Order Modifying Stay allowing Homecoming Financial Network, the primary secured creditor on the residence, to pursue nonbankruptcy remedies against Debtors' residence.

## CONCLUSIONS OF LAW

**1. Sanctions Pursuant to Fed. R.Bankr.P. 9011**

In the Motion, Debtors alleged that they were entitled to sanctions against the United States on the basis that the IRS violated Fed.R.Bankr.P. 9011 by filing a Proof of Claim which failed to give Debtors credit for their $13,600 payment. Fed.R.Bankr.P. 9011 is intended to deter the possibility of abuses in the filing of pleadings and documents with the Court and to ensure that, prior to such filings, litigants have made a reasonable inquiry as to the facts of the case and the plausibility of the claims asserted under the law. *See, e.g., In re McAllister*, 123 B.R. 393, 395 (Bankr. D.Or.1991). The rule provides in pertinent part:

(b) **Representations to the Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firm, or parties that have violated subdivisions (b) or are responsible for the violation.

■ The language of the rule emphasizes the requirement of a prefiling inquiry, and courts have held that the standard used to determine whether a reasonable inquiry was conducted is an objective one, which explores the "reasonableness under the circumstances." *In re McAllister*, 123 B.R. at 395; *see also Anderson v. Simchon (In re Southern Textile Knitters, Inc.); C/A 98–07203–W; Adv.Pro. No. 99–80026–W (Bankr.D.S.C.8/18/2000)*. The Court's inquiry as to the merits of the pleading focuses on "what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Jones v. International Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir.1995). However, under the recent amendments of the rule, a continuing responsibility is placed on the litigants to evaluate the plausibility of the claims made in the pleadings. *See, e.g., Anderson v. Simchon (In re Southern Textile Knitters, Inc.)*, C/A No. 98–07203–W; Adv.Pro. No. 99–80026–W (Bankr.D.S.C. 8/16/00).

■ In 1997, Fed.R.Bankr.P. 9011 was amended to include a "safe harbor" provision which prescribes specific procedural requirements that must be strictly complied with in order for sanctions to be imposed under the rule.[4] The rule was amended to provide:

(c)(1)(A) ... A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).... The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged in the filing of a petition in violation of subdivision (b).

Courts have strictly interpreted the procedural requirements outlined in subsection (c) and have held that requests for sanctions under that rule are improperly made if they are included as an additional prayer for relief contained in another motion. *See, e.g. Anderson v. Simchon (In re Southern Textile Knitters, Inc.)*, C/A No. 98–07203–W; Adv.Pro. No. 99–80026–W (Bankr.D.S.C.8/16/00). Furthermore, the rule requires that a party seeking sanctions must follow a two-step process: first, the motion must be served on the opposing party; second, after the twenty-one day "safe harbor" period has passed, the motion may be filed with the court. *See, e.g., Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir.1997).

Counsel for the United States of America objected to Debtors' Motion on the ground that their request for sanctions pursuant to Fed.R.Bankr.P. 9011 was not procedurally proper in that it failed to satisfy each of the prerequisites for filing a Fed.R.Bankr.P. 9011 motion. First, Debtors did not serve the motion for sanctions pursuant to Fed.R.Bankr.P. 9011 separately from other motions, instead including it with the Objection to Proof of Claim and request for damages due to the violation of the automatic stay pursuant to § 362(h). Second, Debtors' Motion was not presented to the United States of America twenty-one days prior to its filing with the Court.

■ First, the Court finds that it is procedurally improper to include a request for Fed.R.Bankr.P. 9011 sanctions with an Objection to Proof of Claim. *See, e.g., Glutzer v. The Prudential Ins. Co.*, 183 F.R.D. 632, 638 (N.D.Ill.1999) (holding that request for Rule 11 sanctions was improperly made in that it was made in the response brief to a motion for summary judgment); *Omega Sports, Inc. v. Sunkyong America, Inc.*, 872 F.Supp. 201, 203 (E.D.Pa.1995) (holding that it was proce-

---

**4.** Fed.R.Civ.P. 11, which is equivalent to Fed. R.Bankr.P. 9011, was amended in 1993 to

provide for the same procedural changes.

durally improper to include a request for Rule 11 sanctions along with a motion to remand). In *In re Smith*, 230 B.R. 437 (Bankr.N.D.Fla.1999), the debtors had objected to the mortgage company's claim of $800 in bankruptcy attorney's fees and costs and $20 in inspection fees. In the same objection to claim, the debtors included a request for sanctions under Fed.R.Bankr.P. 9011 for the filing of a frivolous claim. The Court noted that the debtors had included their request for sanctions with their objection to claim and proceeded to conclude that the motion for sanctions should be denied because it was "procedurally as well as substantively defective." *Id.* at 441. Similarly, in this case, the Court finds that the inclusion of the request for Fed.R.Bankr.P. 9011 sanctions with the objection to the IRS's claim filed on July 15, 1999 and with the request for damages pursuant to § 362(h), make the Rule 11 motion procedurally defective.

Furthermore, the Court finds that the second procedural requirement that the motion be served upon the opposing party twenty-one days prior to it being filed with the Court was also not followed in this case. The "safe-harbor" provision is intended to give the parties against whom the motion is directed an opportunity to remedy the alleged wrongs in order to escape the possible sanctions. "Only if the challenged item is not withdrawn or corrected within 21 days after service is the motion to be filed or presented to court." *Pendleton v. Central New Mexico Correctional Facility*, 184 F.R.D. 637, 640 (D.N.M.1999). In this case, Debtors first filed the Motion on February 25, 2000, and later amended it on April 25, 2000. In the meantime, on March 7, 2000, the IRS filed an amended Proof of Claim.[5] "The plain language of the rule indicates that this notice and opportunity prior to filing is mandatory." Debtors did not comply with the procedural prerequisites of the rule; therefore, the request for sanctions pursuant to Fed.R.Bankr.P. 9011 cannot be granted. *See, e.g., Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir.1995) (holding that plaintiffs' failure to serve the motion for Rule 11 sanctions prior to filing it with the court deprived opposing counsel of the "safe harbor" opportunity, thus precluding the imposition of such sanctions). In making this ruling, the Court notes that Debtors voluntarily surrendered their residence more than thirty days after the IRS filed an amended Proof of Claim. Therefore, prior to making that decision, Debtors had a sufficient time to ask this Court to intervene, if necessary, to prevent such loss. In this case, the surrender of Debtors' home, which they claim is the primary damage caused by the IRS's actions, had not occurred prior to the date the IRS amended its Proof of Claim; therefore, complying with the "safe harbor" provision might have made a significant difference in the outcome of events.

### 2. Violation of Proof of Claim Pursuant to § 362(h).

Section 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[6] The burden is on the party seek-

---

5. In the alternative to the objection on the ground of failure to serve the request for sanctions prior to filing it with the Court, the United States argues that Debtors filed their request for Fed.R.Bankr.P. 9011 sanctions even though the IRS properly amended its Proof of Claim on March 7, 2000, over a month prior to the filing of the Amended Motion; thus violating the prohibition on the filing of a motion for sanctions when a challenged claim has been appropriately corrected within 21 days of the motion being served.

6. Section 106(a)(3) provides: "The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, *but not including an award of punitive damages.*" (Emphasis added). *See, e.g., Deleon v. United States (In re Deleon)*, C/A No. 93–72315–D; Adv.Pro. 95–8130

ing damages for the violation of the stay to prove the following elements: "(1) that a bankruptcy petition was filed, (2) that the debtors are "individuals" under the automatic stay provision, (3) that the creditors received notice of the petition, (4) that the creditors' actions were in willful violation of the stay, and (5) that the debtors suffered damages." *In re Flack*, 239 B.R. 155, 162–63 (Bankr.S.D.Ohio 1999); *In re Lamar*, 249 B.R. 822, 825 (Bankr.S.D.Ga. 2000) ("When damages are sought under § 362(h) for violation of the automatic stay, the party seeking damages bears the burden of proof."); *Aiello v. Providian Fin. Corp. (In re Aiello)*, 231 B.R. 684, 688–89 (Bankr.N.D.Ill.1999) ("In order to be entitled to compensation, the debtor must further show that the violation was willful and that she sustained actual damages as a result."); *In re Clarkson*, 168 B.R. 93, 95 (Bankr.D.S.C.1994) ("The moving party bears the burden of proof in order to prevail on an action for violation of the automatic stay and must prove his case by clear and convincing evidence."); *Felder v. American Gen. Fin.*, C/A No. 97–05465–W; Adv.Pro. No. 98–80146–W (Bankr.D.S.C.7/7/2000) (quoting *In re Aiello*, 231 B.R. at 712) (" 'Actual damage is a statutory element of this cause of action under subsection (h). It is not just a mathematical question to be resolved after liability has been found.' "); *see also Archer v. Macomb*, 853 F.2d 497 (6th Cir.1988) (noting that an award of damages under § 362(h) must have a sufficient factual foundation).

In their pleadings, Debtors contend that the IRS violated the automatic stay when it filed an inaccurate Proof of Claim that did not give them credit for their $13,600 payment, which they had requested be applied to their 1997 federal income tax liability. Debtors' position is that a Proof of Claim that is filed in an amount that is grossly overstated should be considered a violation of the automatic stay. The Court declines to accept Debtors' position for the following reasons.

First, the filing of a Proof of Claim is expressly provided for by Fed. R.Bankr.P. 3002 and is necessary for a creditor to protect its interests in a Chapter 13 case. Fed.R.Bankr.P. 3002(a), in fact, provides that "[a]n unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005." In the instance where a dispute arises over the amount listed on the proof of claim, debtors are protected by Fed.R.Bankr.P. 3007 which provides that "[a]n objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing." Therefore, the Bankruptcy Code expressly delineates the manner in which disputes over a claim are to be initiated.

Second, the Court finds that the automatic stay " 'does not operate against the court with jurisdiction over the bankruptcy.' " *Robert Christopher Assoc. v. Franklin Realty Group, Inc. (In re FRG, Inc.)*, 121 B.R. 710, 714 (Bankr. E.D.Pa.1990) (citing *In re Teerlink Ranch Ltd.*, 886 F.2d 1233, 1237 (9th Cir.1989)); *see also In re Briarwood Hills Assoc.*, 237 B.R. 479, 480 (Bankr.W.D.Mo.1999) ("[T]he automatic stay does not apply to proceedings in the bankruptcy court having jurisdiction over the debtor. Numerous courts have held that the automatic stay implicitly does not bar a party from commencing a proceeding against the debtor in the court where the bankruptcy

(Bankr.D.S.C.4/12/1996) (noting that debtor's demand for punitive damages was dismissed by order of the court because the Department of Veterans' Affairs is a "governmental unit"); *United States v. Flynn (In re Flynn)*, 185 B.R. 89, 93–94 (S.D.Ga.1995) (holding that recovery of punitive damages against the United States for the willful violation of automatic stay pursuant to § 362(h) is barred under the Bankruptcy Reform Act of 1994).

petition is pending."); *In re Bird,* 229 B.R. 90, 95 (Bankr.S.D.N.Y.1999) (citations omitted) ("The purposes of the automatic stay, to preserve the assets of the debtor for the benefit of all creditors and to protect the creditors from each other by stopping the race to seize the debtor's assets, are not advanced by disallowing suits against the debtor in the court where the bankruptcy case is pending. In fact, the opposite is true. Having such litigation go forward in what can be termed the home court centralizes all actions against the debtor in one forum under the control of one court and thereby aid the home court in protecting the debtor and creditors and in efficiently administering the estate."). In other words, the automatic stay serves to protect the bankruptcy estate from actions taken by creditors outside the bankruptcy court forum, not legal actions taken within the bankruptcy court. The filing of a Proof of Claim before a bankruptcy court, which is in control over the process of administering the property of the bankruptcy estate, is the logical equivalent of a request for relief from the automatic stay, which cannot in itself constitute a violation of the stay pursuant to § 362(h). *See, e.g., In re FRG, Inc.,* 121 B.R. at 714. Therefore, as a matter of law, Debtors' argument fails.

■■■ Finally, Debtors have not sufficiently demonstrated that they suffered damages as a direct result of the IRS's actions which could not have been mitigated by them or their counsel. Debtors claim that the IRS's conduct in this case resulted in the surrender of their residence as well as emotional distress to both Mr. and Mrs. Sammon and in Mr. Sammon's loss of one week of work. As to the claim that the IRS's actions led to the surrender of Debtors' home, the evidence in the file and presented to the Court at the hearing shows that Debtors surrendered their residence voluntarily after several months had passed within which they

could have properly raised their concerns regarding the inflated IRS's Proof of Claim with the Court. Debtors and their counsel were or should have been aware of the IRS' incorrect Proof of Claim at least since October 6, 1999, when a modified Chapter 13 plan was filed, taking into account the July 15, 1999 Proof of Claim and respective higher payments to the Chapter 13 Trustee. However, neither Debtors nor their counsel took any corrective action until January 21, 2000, when Debtors' counsel, through his office manager, wrote the IRS inquiring about the $13,600 payment and about Debtors' outstanding tax liability. Furthermore, it was not until February 25, 2000 when Debtors finally filed an Objection to Proof of Claim, which was included with the Motion presently before this Court requesting that sanctions be imposed on the United States. On that same date, Debtors also filed a Motion to Modify Previously Confirmed Plan requesting that the Court allow them to amend the plan and provide for the surrender of their home and their 1994 Lincoln Town Car. On March 9, 2000, after the IRS's Proof of Claim had been amended to account for the $13,600 payment, Debtors moved to modify the plan once again to reduce their claim for taxes owed. The plan was modified one last time on March 28, 2000 to reflect that Debtors still intended to surrender their residence but had decided to retain their 1994 Lincoln Town Car. At the hearing on the Motion, Debtors further testified that they did not move out of their home until sometime in late March or April and admitted that the IRS amended their Proof of Claim prior to the time that they received the notice of foreclosure.[7]

The Court is sympathetic with the many hardships that Debtors have had to endure and the difficulties that were caused by the discrepancies in the IRS's Proof of Claim. However, Debtors failed to meet the burden to prove that their alleged greatest

7. The Court also notes that on May 8, 2000, Debtors entered into a Consent Order with the mortgage company to allow the relief from the stay on their residence.

damage, the surrender of their home due to the IRS's filing of the incorrect Proof of Claim, was proximately caused by the IRS's action. The Court notes that, according to the testimony at the hearing, the main factor which contributed to Debtors' voluntary decision to surrender the home was the fact that Mr. Sammon had to undergo serious surgical procedures which resulted in him losing income for approximately three months and led to further financial difficulties. During the hearing, Mr. Sammon also testified that one of the contributing factors to their decision to surrender the home was that the payments necessary to retain it had increased due to their taking out of a second mortgage to make the original $13,600 payment on the Offer in Compromise. The Court notes that Debtors' decision in 1998 to take out a second mortgage on the home in order to make the Offer on their 1997 tax liability was made prior to the IRS's action complained of in the Motion.

 As to Debtors' claim that the IRS's conduct caused emotional distress and further caused Mr. Sammon to lose one week of work, the Court finds that Debtors failed to mitigate their damages by not seeking formal redress until approximately seven months after the subject Proof of Claim was filed. "[T]he debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with regard to such violations." *Clayton v. King (In re Clayton)*, 235 B.R. 801, 811 (Bankr. M.D.N.C.1998) (citing *Mitchell Constr. Co. v. Smith (In re Smith)*, 180 B.R. 311, 320 (Bankr.N.D.Ga.1995)); *see also Lori v. Lori (In re Lori)*, 241 B.R. 353, 356–57 (Bankr.M.D.Pa.1999); *In re Brock Utilities & Grading, Inc.*, 185 B.R. 719, 720

(Bankr.E.D.N.C.1995). The Proof of Claim which is the subject of this Order was filed on July 15, 1999. However, it was not until January 21, 2000, after the expiration of the moratorium which had been granted until January of 2000, that Debtors' attorney corresponded with the IRS to inquire about the $13,600 which had been remitted with the Offer in Compromise. Furthermore, it was not until February 25, 2000 that Debtors filed a formal Objection to the Claim, along with the Motion which is presently before the Court. The Court finds no other evidence that Debtors or counsel tried to contact the IRS in order to resolve the discrepancies.[8] At the hearing, Mrs. Sammon testified that she had no further contact with the IRS following the letter of June 15, 1999 until January of 2000, when her lawyer finally wrote the IRS to inquire about the correct amount of tax liability. Formal efforts by Debtors or their counsel during this critical time might have clarified the situation and the discrepancies in the amount that Debtors owed to the IRS and might have resolved the further complications alleged.

 Lastly, Debtors have requested that the Court award sanctions against the United States pursuant to § 105(a) which provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Court finds that the circumstances of this case do not warrant any award of sanctions under that section of the Code; therefore, it declines to award Debtors damages or attorney's fees under the facts of the present case.

## CONCLUSION

For the foregoing reasons, it is therefore,

---

8. At the hearing, there was some contradicting testimony of when Debtors found out about the increase in payments to the Trustee. Whereas Mrs. Sammon testified that she did not learn about the increase in payments until January of 2000, Mr. Sammon testified to the same effect but also stated that he had discussed the increase in payments with his lawyer in connection with the request for a moratorium. The discrepancies in testimony seem to indicate that there might have been some miscommunication between Debtors and their counsel which may have further led to the problems presented in this case.

ORDERED that Debtors' Amended Motion for Sanctions, Attorney's Fees, Costs, and Damages, Other Relief, and Objection to Proof of Claim is denied.

**AND IT IS SO ORDERED.**