# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 12-2344

_____

Richard P. Garden, Jr., Trustee

*Plaintiff - Appellee*

v.

Central Nebraska Housing Corp.

*Defendant - Appellant*

Pinnacle Bank, of Newcastle Wyoming; Security First Bank

*Defendants*

Rick Roberts; Loretta Sue Roberts

*Defendants - Appellees*

John Zapata; Coljo Investments, LLC

*Defendants - Appellants*

Pinnacle Bank; Unverzagt Feed Lot

*Defendants*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

_____

Before WOLLMAN, GRUENDER, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Richard Garden, acting as trustee for certain farm property pursuant to a deed of trust, brought this interpleader action seeking a determination of rights to the sales proceeds from an auction of the farm. Central Nebraska Housing Corp. (CNH) and John Zapata challenge the district court's[1] orders: 1) denying CNH's partial motion for summary judgment, in which CNH argued that it had a contract to purchase the farm for $113,000; 2) granting Rick and Loretta Robertses' partial motion for summary judgment concerning whether the sale of the farm to Gittaway Ranch, LLC could be set aside; 3) granting in part the Robertses' second motion for partial summary judgment concerning the reduction of CNH's secured claim; and 4) awarding sanctions against Zapata and CNH. We affirm.

## I. Background

The Robertses owned a farm in Sheridan County, Nebraska. On January 22, 2010, they filed for Chapter 7 bankruptcy, claiming a homestead exemption in the farm under Nebraska Revised Statutes §§ 40-101 to 40-108. On May 19, 2010, Zapata's company, CNH, acquired a first deed of trust in the farm by virtue of a post petition assignment of a promissary note and trust deed. The trust deed granted the trustee a power of sale and secured, among other things, the following:

_____

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

Payment of any sums advanced by Beneficiaries or Trustee (with interest as herein provided), which sums are reasonably necessary or incidental to improvement or protection of the Trust Property; or which sums are expended in the exercise of rights granted herein. These sums include, but are not limited to, sums advanced for payment of taxes, insurance, abstracting, survey, recording, publication expense, court costs, expenses of litigation (including any fees of an attorney to the extent authorized by law), and expenses of sale.

The trust deed provided beneficiaries with the right to "inspect the Trust Property at any reasonable time and [to] perform any acts authorized hereunder."

On June 1, 2010, the Robertses defaulted on their obligations arising under CNH's trust deed, thereby triggering the trustee's authority to sell the farm. On July 15, 2010, CNH obtained relief from the automatic bankruptcy stay and filed a proof of claim asserting a secured claim. On July 20, 2010, CNH filed notices of default and elections to sell the farm.

On November 15, 2010, Greg Frayser, acting as the representative for the trustee, conducted an auction to sell the farm. Rick Roberts and representatives from Pinnacle Bank, CNH, Coljo Investment, and Gittaway Ranch, LLC attended the sale. Before the auction opened, Frayser read aloud a bid sheet that stated, in part, "The Trustee's Sale will remain open for ten (10) minutes and I will accept any bids offered during that time." Frayser did not announce that he would close the sale immediately upon the expiration of ten minutes and refuse to accept any further bids.

CNH opened the bidding, and thereafter Pinnacle Bank, CNH, Coljo Investments, and Gittaway Ranch bid against each other. Immediately before the ten-minute period expired, CNH bid $113,000. Frayser then announced the expiration of the ten-minute period. Frayser did not issue a warning that the ten-minute period was about to expire, nor did he solicit any additional bids before closing the auction.

-3-

Frayser did not announce that the property was sold to CNH. Pinnacle Bank protested the auction's conclusion. After Frayser consulted with the trustee, he accepted additional bids, over CNH's protestation. CNH bid $166,100, but its bid was topped by a $166,500 bid by Gittaway Ranch. Frayser recorded Gittaway Ranch as the "highest and prevailing bidder" on the bid sheet. Gittaway Ranch assigned its successful bid to Coljo Investments (owned by Zapata and his wife), which paid the trustee $166,500 for the farm.

Pinnacle, CNH, and Security First made competing claims to the sales proceeds. The trustee then filed an interpleader action in the bankruptcy court seeking a determination of the claims. The bankruptcy court found that it lacked jurisdiction over the interpleader complaint and transferred the case to the district court.

CNH and the Robertses filed cross motions for partial summary judgment. CNH argued that it had purchased the farm for $113,000 and that $53,500 of the sales proceeds should be returned to it. The Robertses argued that the district court should uphold the sale of the farm to Gittaway Ranch. The district court denied CNH's motion and granted the Robertses' motion.

The Robertses later filed a second motion for partial summary judgment, arguing that their homestead exemption entitled them to $60,000 from the sales proceeds and disputing, among other things, the amount of CNH's secured claim. Specifically, the Robertses argued that CNH's claims for $17,426 for monthly inspections of the farm and for $7,553.57 in attorney's fees were not part of its secured claim. The district court granted the Robertses' motion in part, finding that CNH's inspections of the farm before July 15, 2010, were attempts to further encumber the farm and were void as being in violation of the automatic stay; that the Bankruptcy Code allowed the Robertses to avoid the inspection fees occurring after

July 15, 2010; and that CNH had failed to set forth evidence that the attorney's fees should be included as part of its secured claim.

Following the receipt of briefs and affidavits, the district court issued findings of fact and conclusions of law concerning the parties' rights to the remaining sales proceeds. The Robertses then filed an amended motion seeking sanctions against Zapata and CNH for violating the automatic stay and the bankruptcy court's discharge order and for failing to admit and deny discovery questions. The district court, relying on an affidavit from the Robertses' attorney and an accompanying invoice, granted the Robertses' motion in part, finding that as a result of CNH's and Zapata's violation of the automatic stay, the Robertses had incurred $25,792.25 in actual damages in the form of attorney's fees incurred from November 16, 2010 through January 31, 2012.

## II. Discussion

CNH challenges the district court's rulings, arguing that it had a contract to purchase the farm for $113,000 and that it had established that the sale to Gittaway Ranch should be set aside. CNH also argues that the district court erred in its ruling concerning the amount of CNH's secured claim and that the district court abused its discretion in imposing sanctions.

### A. Summary Judgment Orders

We review *de novo* the district court's grants of summary judgment and may affirm the district court on any basis supported by the record. Hohn v. BNSF Ry. Co., 707 F.3d 995, 1000 (8th Cir. 2013). "Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law." Id. (citing Fed. R. Civ. P. 56).

1)	Whether CNH had a valid contract to purchase the farm

CNH argues that a contract was formed between the trustee and CNH when CNH made its $113,000 bid immediately before the close of the ten-minute bidding period. CNH, as the entity seeking to enforce the alleged contract, bears the "burden of proving there was a definite offer and an unconditional acceptance." Marten v. Staab, 543 N.W.2d 436, 443 (Neb. 1996) (quoting Satellite Dev. Co. v. Bernt, 429 N.W.2d 334, 337 (Neb. 1988)). That is, CNH must demonstrate that "a valid, legally enforceable contract exists." Id. (quoting Bernt, 429 N.W.2d at 337).

Generally speaking, there are two types of auctions that give rise to a contract for the sale of property: those without reserve, and those with reserve. Id. In an auction without reserve, the seller is the offeror and the bidder is the offeree. Id. "[T]he contract is consummated with each bid, subject only to a higher bid being received." Id. (quoting Pitchfork Ranch Co. v. Bar TL, 615 P.2d 541, 548 (Wyo. 1980)). "In this type of sale, the seller may not withdraw his property once any legitimate bid has been submitted[.]" Id. (quoting Pitchfork, 615 P.2d at 548).

The roles of the seller and bidder are reversed in an auction with reserve, with the bidder acting as the offeror and the seller as the offeree. Id. "[T]he auctioneer, as agent of the seller, invites bids (offers) with the understanding that no bargain exists until the seller has made a further manifestation of assent; the auctioneer may reject all bids and withdraw the goods from sale until he announces completion of the sale." Id. (quoting Rosin v. First Bank of Oak Park, 466 N.E.2d 1245, 1249 (Ill. App. Ct. 1984)). "[A]uctions are presumed to be with reserve unless they are expressly stated to be without reserve." Id. (quoting Cuba v. Hudson & Marshall, Inc., 445 S.E.2d 386, 387 (Ga. Ct. App. 1994)).

CNH contends that the following language on the bid sheet created an auction without reserve: "The Trustee's Sale will remain open for ten (10) minutes and I will

accept any bids offered during that time." This language, however, does not constitute an express statement that the auction would be without reserve. Instead, the language indicates a "preliminary negotiation, not intended and not reasonably understood to be intended to affect legal relations." Marten v. Staab, 537 N.W.2d 518, 523 (Neb. Ct. App. 1995) (citation omitted) (explaining that seller's statements that property "will be sold to the highest bidder" does not ordinarily transform an auction into one without reserve), *aff'd*, 543 N.W.2d 436 (Neb. 1996).

CNH argues that even if the auction was with reserve, it need only show that there was an offer, an acceptance, and closure of the auction to create a valid sale under the Nebraska Trust Deeds Act. CNH contends that it has met this burden, pointing to its $113,000 bid as the offer, Frayser's statement before the auction that he would "accept any bids offered during that time" as the acceptance, and Frayser's announcement that the ten-minute time period had expired as the closure of the sale. The general rule is that "acceptance of a bid at auction is denoted by the fall of the hammer or by any other audible or visible means signifying to the bidder that he or she is entitled to the property[.]" 7 Am. Jur. 2d Auctions and Auctioneers § 31 (2013) (footnote omitted). Here, there was no fall of the hammer at the conclusion of the ten minutes. Instead, Frayser simply announced that the ten-minute time period had expired. Frayser did not make any indication that he had accepted CNH's bid, such as saying that the property was "going, going, gone" or "sold" to CNH. Id. (footnotes omitted) (explaining that in addition to the fall of the hammer, an auctioneer's use of these expressions may also indicate acceptance of the last bid received). CNH's argument that Frayser's statement that he would "accept any bids offered during that time" constitutes an acceptance of their bid is a continued attempt by CNH to treat the auction as one without reserve. When an auction is with reserve, as we conclude this one was, Frayser's initial statement could not have been the "audible or visible means signifying to the bidder that he or she is entitled to the property[.]" Id. Accordingly, the district court properly denied CNH's motion for summary judgment.

2) Whether CNH can set aside the sale of the farm to Gittaway Ranch

CNH argues that the district court erred by finding that CNH could not set aside the sale to Gittaway Ranch and in granting the Robertses' motion for partial summary judgment. Relying on Gilroy v. Ryberg, 667 N.W.2d 544 (Neb. 2003), CNH argues that the sale to Gittaway Ranch should be set aside because the auction process was defective, causing prejudice to CNH in that Frayser's acceptance of bids after the ten-minute period expired resulted in Zapata's having to pay a higher price to purchase the farm. Assuming that CNH can even challenge the sale, it cannot demonstrate prejudice, for, as set forth above, its $113,000 bid did not result in a valid contract between it and the trustee.

3) Whether CNH set forth sufficient evidence to create a material question of fact concerning its attorney's fees

CNH argues that the district court erred in granting the Robertses summary judgment on the issue whether the $7,553.57 in attorney's fees were part of CNH's secured claim.[2] Title 11, United States Code, Section 506(b) allows an oversecured creditor to recover "any reasonable fees, costs, or charges provided for under the agreement . . . under which such claim arose." In First Western Bank & Trust v. Drewes (In re Schriock Construction, Inc.), 104 F.3d 200, 201 (8th Cir. 1997), we explained that a creditor seeking to recover attorney's fees under § 506(b) must show: "(1) that it is oversecured in excess of the fees requested; (2) that the fees are reasonable; and (3) that the agreement giving rise to the claim provides for attorney's fees."

---

[2]To the extent that CNH disputes the district court's finding that CNH's inspection fees were not part of its secured claim, this argument is waived, as CNH has failed to develop it on appeal. See Cubillos v. Holder, 565 F.3d 1054, 1058 n.7 (8th Cir. 2009) (deeming an argument not developed on appeal to be waived).

In their motion for partial summary judgment, the Robertses included a billing statement from CNH's attorney and, without conceding the reasonableness of the fees, argued that CNH's attorney's fees that arose before the Robertses defaulted or were unrelated to the trust deed's foreclosure were not part of CNH's secured claim. The district court found that the trust deed secured the payment of certain attorney's fees "necessary or incidental to improvement or protection" of the farm, but that CNH had failed to offer any evidence showing that its attorney's fees satisfied this requirement or were reasonable.

CNH argues that the district court's finding was erroneous because the district court improperly shifted to it the burden of demonstrating the necessity and reasonableness of attorney's fees. We disagree. A party opposing a properly supported motion for summary judgment like the Robertses' "has an affirmative burden to designate specific facts creating a triable controversy." Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 714 (8th Cir. 2004) (quoting Crossley v. Ga.-Pac. Corp., 355 F.3d 1112, 1113 (8th Cir. 2004) (per curiam)). CNH's only response to the Robertses' motion for partial summary judgment on this issue was a short statement that CNH's claim for attorney's fees was a question of fact. Although CNH acknowledges that it would bear the burden at trial of showing that its attorney's fees were reasonable and that they were necessary or incidental to the protection or improvement of the farm, it failed to offer any evidence on these issues. In these circumstances, the district court did not err in granting summary judgment in favor of the Robertses on this issue.[3] See Crotty v. Dakotacare Admin.

---

[3]In its brief on appeal, CNH asserts, without citation to the record, that there were affidavits in the record from Zapata and Garden establishing that the attorney's fees were reasonable and were necessary to protect the farm. Although CNH submitted affidavits from Zapata and Garden concerning attorney's fees prior to the district court's final determination of the parties' rights to the sales proceeds, these affidavits were not before the district court when it ruled on the Robertses' second motion for partial summary judgment. Accordingly, we are unable to consider them.

Servs., Inc., 455 F.3d 828, 831 (8th Cir. 2006) ("When a party . . . has the burden of proof on an issue, it must present evidence sufficient to create a genuine issue of material fact to survive a properly supported summary judgment motion.").

## B. Sanctions

CNH contends that the district court erred by awarding the Robertses $25,792.25 in sanctions. The Robertses' January 22, 2010, bankruptcy filing triggered the automatic stay provisions of 11 U.S.C. § 362. Section 362(k)(1) provides that a debtor injured by a "willful" violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees[.]" To recover under § 362(k), the debtor must show that the creditor's violation of the automatic stay was willful and that the violation injured the debtor. See Lovett v. Honeywell, Inc., 930 F.2d 625, 628 (8th Cir. 1991). We review a district court's award of sanctions for an abuse of discretion. Schwartz v. Kujawa (In re Kujawa), 270 F.3d 578, 581 (8th Cir. 2001).

CNH argues that even if it violated the automatic stay, the district court abused its discretion by awarding sanctions because the Robertses did not suffer any actual damages. Specifically, CNH argues that our decision in Lovett establishes that attorney's fees can never, by themselves, constitute independent "actual damage" under § 362(k). We do not read Lovett so broadly. In Lovett, the only evidence of damages presented was that of bringing a motion for a temporary restraining order and contempt sanctions in the bankruptcy court. 930 F.2d at 629. There was no evidence of the trustee's costs and attorney's fees associated with defending the property of the bankruptcy estate from the alleged violation of the bankruptcy stay. Id. Here, the district court awarded the Robertses the attorney's fees they incurred

---

See ACLU of Minn. v. Tarek ibn Ziyad Acad., 643 F.3d 1088, 1095 (8th Cir. 2011) ("Generally, we cannot consider evidence that was not contained in the record below when the district court rendered its decision.").

"to protect their homestead exemption from CNH and Zapata's attempts to further encumber estate property in violation of the automatic stay." D. Ct. Order of May 10, 2012, at 9. Had the Robertses not incurred these fees, the district court explained, "they would have lost most, if not all, of the value of their homestead exemption." Id. This is not a situation in which the district court awarded attorney's fees for time the Robertses' attorney spent prosecuting the March 13, 2012, motion for sanctions. Indeed, the district court specifically declined to award the Robertses attorney's fees incurred after January 31, 2012, finding that the Robertses had failed to point "to any evidence indicating with reasonable certainty that those fees have actually been incurred or that they were incurred as a result of protecting their homestead from violations of the automatic stay or discharge injunction." Id. at 10.

Alternatively, CNH argues that the district court abused its discretion because the fees awarded were not incurred solely in response to issues raised by CNH and because the Robertses failed to show with specificity those fees attributable to CNH's and Zapata's violations of the automatic stay. Our review of the entire record satisfies us that the district court, which was most familiar with this litigation and in the best position to determine the amount of actual damages, did not abuse its discretion in finding that the Robertses had incurred $25,792.25 in actual damages as a result of CNH's and Zapata's violation of the automatic stay. See Hutchins v. A.G. Edwards & Sons, Inc., 116 F.3d 1256, 1260 (8th Cir. 1997) ("Because 'the district courts are more familiar with proceedings before them and with the conduct of counsel than we are, . . . we should give them a large measure of discretion in deciding what sanctions are appropriate for misconduct.'" (quoting Givens v. A.H. Robins Co. Inc., 751 F.2d 261, 263 (8th Cir. 1984))); Hubbard v. Fleet Mortg. Co., 810 F.2d 778, 782 (8th Cir. 1987) (per curiam) ("In contempt cases, the trial court has discretion to fashion the punishment to fit the circumstances.").

III.  Conclusion

The judgments and award of sanctions are affirmed.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.


I agree with the Court that CNH's bid of $113,000 failed to create a legally enforceable contract and that the sale to Gittaway Ranch for $166,500 should not be set aside.  Furthermore, I would affirm the district court's conclusion that CNH fell short of establishing a genuine issue of material fact regarding whether its attorneys' fees were both reasonable and authorized by the trust deed.  But while some of CNH's arguments to this court may not have been expressed with ideal clarity, I conclude that CNH did not waive the argument that its inspection costs should be included in its secured claim pursuant to § 506(b), *see supra* n. 2.  The district court analyzed this matter incorrectly, and I would reverse and remand to the district court for further proceedings.  I also would vacate the award of sanctions.


CNH did not waive its claim to inspection costs under § 506(b).  In order to understand the arguments CNH presented to this court, it is first necessary to understand the district court ruling to which CNH was responding.  As the district court noted in its January Memorandum and Order ("January Order"),

> Section 506(b) of the Bankruptcy Code governs whether fees, costs, or charges become part of a creditor's allowed secured claim.  *See* 11 U.S.C. § 506(b).  "To recover attorney's fees under section 506(b) . . . a creditor must establish: (1) that it is oversecured in excess of the fees requested; (2) that the fees are reasonable; and (3) that the agreement giving rise to the claim provides for attorney's fees."

(alteration in original) (quoting *First W. Bank & Trust v. Drewes* (*In re Schriock Constr., Inc.*), 104 F.3d 200, 201 (8th Cir. 1997)).  The district court refused to

incorporate CNH's attorneys' fees into CNH's secured claim because CNH failed to bring forth evidence creating a genuine issue of material fact as to whether the attorneys' fees were reasonable and whether they were authorized under the trust deed as "reasonably necessary or incidental to improve[] or protect[]" the property.[4] Despite recognizing the applicability of the § 506(b) framework to the attorneys' fees issue, the district court inexplicably determined that CNH's analogous request also to incorporate its inspection costs into its secured claim should be analyzed using an entirely different framework. Instead of applying the three-part test from *First Western Bank & Trust v. Drewes*, the district court examined whether the inspections violated the automatic stay or were avoidable post-petition transfers. The court first concluded that any inspection costs "that occurred prior to July 15, 2010," the date the automatic stay was lifted, were "void as a violation of the automatic stay." As to any inspection costs incurred after this date, the court made an alternative holding and determined that they also should be excluded as avoidable post-petition transfers "to the extent such [inspection costs] are not void as a violation of the automatic stay."[5]

In its brief to this court, CNH first argued that the district court reached the wrong result under the three-part test from *First Western Bank & Trust* with regard to its request to incorporate attorneys' fees into its secured claim under § 506(b). CNH then built on this discussion and argued that the district court had further erred by failing to apply this test to its claim for inspection costs. As CNH observed, "[c]ontrary to the law allowing for the collection of such fees as part of the secured claim, the trial court found that such inspection fees were an attempt to encumber the

---

[4]As mentioned above, I agree with the district court's analysis on this point.

[5]The district court's May Memorandum and Order regarding sanctions further indicates that the district court believed inspections conducted after the automatic stay was lifted in July could nonetheless be violations of the automatic stay. The district court noted that "CNH *violated the automatic stay* when it inspected, and thereby attempted to further encumber, property of the bankruptcy estate during the months of May *through August of 2010*." (emphasis added)

property without specific permission from the bankruptcy court." CNH then cited to the portion of the January Order in which the district court concluded that none of the inspection costs could be incorporated into CNH's secured claim because they were either a violation of the automatic stay or avoidable post-petition transfers, or both. CNH pointed out that under the district court's approach, secured creditors would have to obtain "successive relief from the stay for each individual step taken" to "enforce his or her rights under a trust deed." Even after the stay was lifted, the consequence of the district court's holding would be to require secured creditors to specifically "seek additional relief from the stay" if they hoped to subsequently recover costs authorized by a trust deed. CNH went on to argue that the correct approach was for the district court to instead analyze whether the inspection costs could be included in its secured claim under the three-part test in *First Western Bank & Trust*.

When taken together, this section of CNH's brief challenges both of the district court's stated reasons for excluding all of the inspection costs from CNH's secured claim. In deeming this argument "waived," the Court demands a level of clarity and detail from CNH that is unprecedented. CNH argued that the district court analyzed the issue incorrectly, it cited to the portion of the district court's opinion that it disputed, and it described the purportedly proper framework of analysis, including a case citation. This is all that is required under Federal Rule of Appellate Procedure 28(a)(9)(A)[6] and accordingly was sufficient to preserve for this court's consideration the question of whether CNH could include its inspection costs in its secured claim pursuant to § 506(b), or whether these inspection costs were, as the district court concluded, violations of the automatic stay or avoidable post-petition transfers.

---

[6]"The appellant's brief must contain . . . the argument, which must contain appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."

Furthermore, I agree with CNH that the district court's analysis of the inspection costs issue was fundamentally flawed. First, CNH's incurring of inspection costs were not violations of the automatic stay.

> [T]he automatic stay does not bar all post-petition charges on real property, as over-secured creditors are permitted by § 506(b) to add post-petition interest to their secured claims as well as other charges authorized by a creditor's security agreement, including post-petition attorney fees. The concept thus exists in the Bankruptcy Code itself for reducing the bankruptcy estate's equity in real property, thereby eliminating any notion that the status quo must be preserved at all costs.

*Mutual Ins. Co. of New York v. Cnty. of Fresno (In re D. Papagni Fruit Co.)*, 132 B.R. 42, 46 (Bankr. E.D. Cal. 1991) (internal citation omitted). The district court seemed to be under the impression that where a trust deed authorizes a secured creditor to recover certain costs and fees and a creditor takes actions during (and even after) the pendency of the automatic stay that are potentially eligible to be included in his secured claim, then this conduct necessarily encumbers the bankruptcy estate in violation of the automatic stay. This court has found creditors to have violated an automatic stay only where they have taken steps to circumvent the bankruptcy court's control of the bankruptcy estate. *See Sosne v. Reinert & Dupree, P.C. (In re Just Brakes Corporate Sys., Inc.)*, 108 F.3d 881, 884 (8th Cir. 1997) (finding that collecting foreclosure sale proceeds violates automatic stay); *Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 774-75 (8th Cir. 1989) (finding violation of automatic stay where creditor failed to turn over to the bankruptcy estate equipment belonging to debtor); *Small Business Admin. v. Rinehart*, 887 F.2d 165, 167-68 (8th Cir. 1989) (finding violation of automatic stay where creditor put a hold on funds the debtor was entitled to receive instead of turning the funds over to the bankruptcy estate as requested by the trustee); *United States v. Ketelson (In re Ketelsen)*, 880 F.2d 990, 993 (8th Cir. 1989) (finding violation of automatic stay

-15-

where creditor directed IRS to offset a portion of a couple's income tax return against their debt).

The case the district court relied on in reaching its conclusion, *In re Stark*, 242 B.R. 866 (Bkr. W.D.N.C. 1999), reflects the foregoing line of cases. In *In re Stark*, a secured creditor conducted inspections during the pendency of an automatic stay. While the stay was still in effect, the creditor attempted to collect inspection fees from the debtors by billing them directly, rather than filing a request with the court to include the fees in its secured claim. *Id.* at 872. Although this type of creditor activity may encumber the bankruptcy estate, the Robertses have not contended that CNH attempted to collect inspection costs from them. A secured creditor, such as CNH here, that expends its own funds for inspections and then merely seeks reimbursement authorization from a court pursuant to § 506(b) has not violated the automatic stay. The only question for the court is whether those costs and fees are properly included in the secured claim.

This critical distinction between "actions taken by creditors outside the bankruptcy court forum" and "legal actions taken within the bankruptcy court," *In re Sammon*, 253 B.R. 672, 681 (Bankr. D.S.C. 2000), reflects one of the primary purposes of the automatic stay provision, to "protect[] creditors by averting a scramble for the debtor's assets and promoting instead 'an orderly liquidation procedure under which all creditors are treated equally,'" *Farley v. Henson*, 2 F.3d 273, 274 (8th Cir. 1993) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1970), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6297). The automatic stay should not be used to prevent creditors from presenting their competing claims to a court. *Cf. Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 356 (5th Cir. 2008) ("The Bankruptcy Code allows creditors to assert any claim, even if that claim is contingent, unmatured, or disputed. A debtor may object to the claim; the bankruptcy court then determines whether to allow the claim." (internal citation omitted)). The consequence of the district court's approach is that if a creditor seeks to incorporate attorneys' fees

and other costs into its secured claim—as it is entitled to do under § 506(b)—but ends up being wrong about whether it is actually entitled to those costs, then this error becomes a sanctionable violation of the automatic stay. *See* 11 U.S.C. § 362(k). If the district court's interpretation were accepted, it would place a substantial roadblock in the way of actions authorized elsewhere in the Bankruptcy Code. *See United States v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C. Cir. 1991) (ruling that although "the literal words of § 362(a) might actually" render the creditor's action a violation of the automatic stay, "[f]or obvious reasons, however, courts have recognized that § 362(a) cannot stay actions specifically authorized elsewhere in the bankruptcy code").

The district court also erred when it determined that at least some of CNH's inspections were avoidable post-petition transfers. This portion of the district court's analysis primarily relied on *Snyder v. Dewoskin (In re Mahendra)*, 131 F.3d 750 (8th Cir. 1997). In that case, the debtor spent bankruptcy estate funds during the pendency of an automatic stay by incurring ongoing legal services pursuant to a pre-petition representation agreement that was secured by a trust deed. *Id.* at 753-55. By continuing to utilize his attorney's services post-petition, the debtor was necessarily draining the bankruptcy estate because the attorney was to be paid for his work from the proceeds of the sale of the debtor's house. *Id.* at 753. *In re Mahendra* is inapposite because it did not involve, as here, a secured creditor requesting a court to authorize it to recover its previously expended inspection costs. In this situation, there is no transfer of property from the bankruptcy estate unless and until a court authorizes inclusion of the secured creditor's costs and fees under § 506(b). As this court noted in *In re Mahendra*, once the automatic stay went into effect, "[o]nly the bankruptcy court could control the further encumbrance of the estate property." *Id.* at 755. By filing a claim for its inspection fees with the district court, CNH was respecting the court's control of the estate property. If the inspection costs were improper, the appropriate response was for the district court to refuse to add them to CNH's secured claim.

The analysis, therefore, should turn on whether the inspection fees, like the attorneys' fees, can be recovered under § 506(b) because they "are reasonable and provided for in the agreement under which the claim arose." *In re White*, 260 B.R. 870, 880 (B.A.P. 8th Cir. 2001) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). I would remand to the district court to consider if CNH created a genuine issue of material fact as to whether the inspection costs were of a reasonable amount and whether they were authorized by the trust deed.

The district court also awarded sanctions to the Robertses after determining that they suffered actual damages attributable to CNH's supposed violations of the automatic stay. The only violation of the automatic stay identified by the district court was the costs CNH incurred for inspections. Because the district court erred in concluding that CNH's incurring of inspection costs were violations of the automatic stay, and a violation of the automatic stay is a necessary prerequisite for awarding sanctions under § 362(k)(1), I would vacate the award of sanctions. On remand, the district court would be free to address the Robertses' alternative basis for sanctions under FRCP 37(a), (c).

For these reasons, I respectfully dissent.

_____